Case 3-130643 ARC Specialty Service Company Appellant by Michael Witten v. One West Bank U.S. National Banking Association et al. Appellees by Michael Yelman And before we start the clock, I don't know if you all heard that it's been announced before, but Justice Holdridge was unavailable to be here today. He will be participating, he'll be listening to the tapes of these arguments and conferencing the case with the two of us, so you'll have three judges. Okay. If it pleases the court, my name is Michael Witten and I'm here on behalf of ARC Specialty Service Company, the appellant, the contractor who had an improvement contract with the owner of land. The court issue in this matter is whether a primary contractor must record a claim for lien within four months after the completion of his work in order to force his lien against a pre-existing mortgage hold. That's pretty straightforward. Section 1 of the Act creates the primary contractor's right to a lien. The lien is created at the time the owner makes the improvement contract and at such time the lien attaches to any interest in the land which had been previously created by that owner. This includes the owner's fee estate, life estates, estates for years, or any other type of interest that the owner may have created in the land. To enforce that primary contractor's lien, the main sections of the Act that the contractor has to comply with to perfect his claim for lien are sections 9, the two-year statute of limitations, and section 11, the pleading requirements. There is no mandatory requirement for a primary contractor to file a claim for lien as long as he files suit to enforce his lien within two years. Of course, there's risks associated with that. Any subsequent third party who comes in and takes an interest in the land could be prejudiced by not having record notes of the mechanic's claim for lien. In this case, no third parties were prejudiced. No third parties took an interest in the land from the point in time that the improvement contract was made until such time as the contractor filed his suit to foreclose with Liz Penance. The contractor complied with section 9, section 11, and other miscellaneous sections of the Act that he was required to comply with in order to file his lien. The company had a good and valid lien, but the trial court, as a matter of law, subordinated it to the lien of the pre-existing mortgage holder. And then the same result was accomplished in the foreclosure, the order to foreclose on the property against homeowner. If the landowner grants another person an interest in the land after the improvement contract has been made, then an additional requirement is imposed upon the contractor. That did not happen in this case, but if it had occurred, then the contractor would have had to record a claim for lien in the four months from the time he completed his work on the project in order to be able to enforce his lien. In other words, the Act in section 7A prohibits him from enforcing his lien against third parties unless he files a record notice, claim for lien, within four months upon completion of his work. That's the only time that additional four-month requirement comes into play. It doesn't apply to the people who had an interest in the land at the time the improvement contract was made, and that includes the bank that held the mortgage at that point in time. The bank had held its interest in that land for over two years. What possible good would constructive notice, how would constructive notice prevent that bank who obtained its mortgage two years earlier, how would it prevent that bank from acquiring an interest in the land and being prejudiced? It can't. It's impossible. The words that's used in section 7A of the Act relating to the additional requirement, the four-month notice, states that to enforce a mechanic's lien against or to the prejudice of, and the word that's used is other, against or to the prejudice of any other, creditors, encumbrances, or purchasers. This language works in conjunction with section 1A of the Act, which says that existing people who have an interest in the land, the lien affects them, but any other encumbrancer, purchaser, or creditor who comes in, they have to be given that four-month notice. The bank argues that it's not that section 7A in effect reads the four-month notice must be given to all creditors, encumbrances, and purchasers. And they omit the word any other creditors, purchasers, or encumbrances, which is interpreted to mean third parties. In other words, they argue that the contract must give four-month notice, record notice, to all third parties, and then they claim they are a third party to the land, even though they owned a pre-existing mortgage at the time the approval contract was made, but they claim they are a third party because they were not privy to the, under contract law, they were not privy to the construction contract. There's no – that has nothing to do with the requirements. I mean, you can't explain it. The contractor does not and indeed cannot dispute the third parties, any other creditors, encumbrances, or purchasers, who acquire an interest in the land after the approval contract was made are entitled to the four-month record notice. The contractor does not and cannot dispute that. They are entitled to that without a doubt. But in this matter, the bank was a pre-existing encumbrancer and was not a subsequent encumbrancer. For many years the courts in Illinois recognized the different enforcement rules for mechanics lien cases. Interest taken before the approval contract was made as opposed to enforcement of the lien against someone who takes an interest after the approval contract was made. This latter group of people are, like we said, protected by the four-month requirement. However, this four-month requirement, there's no decision that I can find that says this four-month requirement is applicable against pre-existing mortgage holders, pre-existing ownership interests in the land. This position is reinforced by Section 9 of the Act, which says that the contractor has two years to file a suit. Section 7A of the Act, which does not mandate the primary contractor to file a claim for lien, but makes it discretionary, but reaffirms that he has to file a suit within two years. And then Section 16 of the Act, which clearly sets out that as between pre-existing encumbrances and mechanics lien claimants, it is the duty and responsibility of the trial court to determine the priorities of these two parties based upon the formula that's set out in Section 16 of the Act, which has been around for close to 100 years. Affirming the summary judgments entered by the trial court would make Sections 9 and 16 of the Act substantially meaningless as well as the definition of owner that's contained in Section 1A of the Act. The bank also argues that the General Assembly could have amended the Act if it chose to do so and made the provisions of the Act clearer. Undoubtedly, this could have been done, and the General Assembly did make some changes in Public Act 940627, but no substantial changes. No changes in substance. We may have just made confirmatory changes according to the legislative history. The language in Section 7A does not read all creditors, purchasers, or encumbrances are protected by the four-month requirement. The language in Section 8 still reads any other creditor or encumbrancer or purchaser, third party, cannot be punished or prejudiced unless the contractor gives record notice within the four-month period. Let me ask you this. The contractor who's filing the lien, he's an encumbrancer or creditor, isn't he? Yes, he is. And could that be? He's a lien creditor. So the any other, because the sentence starts out talking about the contractor and you can't prejudice any other. The contractor could not prejudice any other mechanic's lien creditor as well. Or any other encumbrancer, creditor, purchaser. Who took an interest in the land after the improvement contract was made. And that would mean other mechanic's lien claimants. Other than himself. The word in Section 7A, the word other distinguishes the subsequently acquired interest from the pre-existing interest in the land. I mean, there's no sense in going over this, I don't think, anymore if you have any other additional questions on it. And the statute is very clear and the courts have upheld the distinction between these two types of interest. And unless you have any questions, I'll end it here. Thank you. Thank you, Mr. Wood. Mr. Gilman. Good afternoon. Mike Gilman on behalf of the Lunger U.S. National Bank Association. Counsel is correct in terms of the issue of the case. The issue of the case is whether a contractor can enforce a lien against or to the prejudice of another encumbrancer on the property if he does not record the lien within four months of his last day of work or file an action to enforce a lien within four days of last day of work. And counsel is also correct that the statute is very clear. And that statute mandates that any contractor, prime contractor, subcontractor, material man, has to record a lien against the property within four months of his last day of work if that contractor wants to enforce it against any other creditor or encumbrancer or purchaser. Whether that encumbrancer is a encumbrancer that acquires interest prior to the construction contract or after the construction contract. In fact, the Illinois Supreme Court specifically answered this question for us in 1846. And this was construing a statute that's very similar to our current statute. The only significant difference was in 1846 the contractor had six months to file an action, whereas our statute now says you have four months to record the lien or file an action. And in the case of Schaeffer v. Weed, the Illinois Supreme Court said, but if the creditor who has furnished the labor of materials shall not file his bill until after the expiration of the six months from the time payment was due to him by the terms of the contract, in that case, his lien ceases as against any other such creditor or encumbrancer by mortgage, judgment, or otherwise, existing in that contract. So we're seeing at the time of the rendition of the judgment whether the same was created prior to or subsequent to making the contract under which he seeks to enforce the lien. Was that six months to file a lien or to file a lawsuit? To file a lawsuit. I believe at that time you didn't have to record a lien. You had to file a lawsuit within six months. Well, I mean, is there a difference? It seems to me that in other words that six months was a statute of limitations in essence. No, I don't think it's a statute of limitations. I think that there's, for example, our current lien statute, Section 9, is a statute of limitations for two years. But the four-month requirement is a prerequisite to enforce the lien as to an encumbrancer. It gives the contractor a right to enforce the lien. It's jurisdictional. It's not a statute of limitations. Let me just ask you logically. I mean, in the case of a preexisting creditor, what's the difference whether it's filed three months or four months or five days? What's the difference to that preexisting creditor? I mean, I know the bottom line difference, but I mean from as far as… Well, first of all, I'd like to distinguish creditor from encumbrancer because the term creditor, as used in, for example, the 1846 decision, means another lien claimant. And so when the court uses, when the statute uses the word other, they mean other lien claimant or encumbrancer or purchaser. But I understand your question. For example, most mortgages allow the lender to advance additional funds after making the loan. So if you have a mortgage recorded against the property and the next day a construction contract is recorded, in that situation you're a prior encumbrancer. Two months later or four months later or six months later, you as a lender can advance additional funds to the owner of the property or to your borrower. If you don't know what the status of the property is, you may be advancing funds and find out that your security interest has been diminished as a consequence of a lien claim. So that's a practical reason of why a mortgagee has an interest in the status of title, frankly, at all times, because they may advance more funds. Another situation is a construction lender. On a construction loan, usually there are periodic payments made. There's a loan made, mortgage recorded, construction contract, and then at each periodic, every month or whatever, the contractor will request funds from the owner and the owner will request money from the lender to pay that contractor. The lender wants to know what the status of the title is, and if there's a lien on the property, it's not going to make that advance of funds. Another situation is the reverse mortgage situation. Under Illinois law, a lender can have a reverse mortgage on the property where every month he pays the borrower a certain sum of money. Most of those mortgages permit the lender not to make additional payments if the security interest has been impaired. And so that's another reason why – a practical reason why a lender would want to know the status of title at all times. You mentioned the question about recording the lien or the – you raised the issue about recording the lien or whether it's to file a lawsuit. After the Schaeffer decision was rendered, there was a Watson decision, which is another old decision, 1887. It applied the Schaeffer decision to find that a lien claimant didn't properly defect his lien. Then the legislature changed the statute, and at that time, the statute then provided – and this is sometime before 1890 – the contractor would have to record his lien within four months of his last day of work. In the McDonald v. Rosengarten case, which was an 1890 case, that case also – the court rejected a claim that the encumbrancer did not include – or the term encumbrancer did not include preexisting encumbrances. So even after the change of statute, even when there was a recording requirement as opposed to just filing a lawsuit, the court held that the term encumbrancer included preexisting and prior encumbrancers. And the fact that these cases are so old, and the legislature had many times to amend the statute and has amended the statute in various ways since then, but never chose to change that language, that, under our jurisprudence, that makes those constructions part of the statute. And that was discussed in the LaSalle Bank v. Cypress Creek case, which I cited in a brief. So those court decisions which say that the term encumbrancer means prior encumbrances as well as encumbrances who acquired their interest after the construction contract are all within the meaning of the term encumbrancer. I believe that Arc's argument in this case pretty much asks the court to rewrite the statute, and they want the court to take the term encumbrancer and change it to mean encumbrances who acquired their interest after the construction contract. That's when the lien arises. But that's not what the statute says, and frankly, that's not a court's duty or right. It's a legislature that writes the statutes, and the courts construe them and enforce them. So I believe that's what they're trying to do, but I don't think the court has the authority to do that. Again, talking about these old cases from the 1800s, no case after those cases has ever held that encumbrancer did not include prior encumbrancers. And to a large extent, that issue is never discussed, but the fact patterns in many cases, and I've said in my brief, are situations where there was an encumbrance on the property, construction contract, and a contractor failing to record within four months. In all those cases, the courts have held that the lien is not enforceable as to that prior encumbrance. It was really not an issue in the case in terms of pre or post. It was different issues, but those were all the fact patterns. The lien framework also relies on Section 1 of the Act to somehow say that a mortgagee is an owner. And I think the logic of the counsel's argument, or the appellant's argument, is that a mortgagee has an ownership interest in the security interest in the land, and therefore, the mortgagee has an interest in the land. And I just don't think that logic floats. A lender has a security interest in the land. It doesn't have an interest in the land, and it's not an owner of the land. I'm sorry, it has an interest in the land, but it has an ownership interest in the land. One of the cases cited in the reply brief by the appellant, People vs. Chicago Title and Trust, talk about ownership, and they say one of the issues about ownership is that you have control over the property and occupation or possession of the property. A lender, a mortgagee, after a foreclosure situation, does not have the right to control the property or occupy the property. A lender is not, a mortgagee is not an owner of the property. Going back to Section 1 of the Mechanics' Lien Act, it describes the owner who can enter into a contract from which a mechanic's lien can arise as someone who owns a lot or track of land. That's what an owner is. And when that owner enters into a contract with a contractor, that's what can give rise to a lien. Once a lien arises, it attaches to the owner's interest in the land, whether it be a stated fee for life, for years, or any other stated right of redemption that owner may have. But this Section 1A of the statute does not make a mortgagee an owner or have an ownership interest in the land, or describe a mortgagee as having an ownership interest in the land. There's been a couple of telecourt decisions which have actually rejected the argument that a mortgagee is not deemed an owner under the statute. Those cases are also cited in my brief, M. Ecker v. LaSalle Bank and Premier Electric v. American National Bank. Both of those cases, a lien claimant tried to equate a mortgagee as an owner and therefore in an effort to relieve the contractor of the obligation to record within four months, and both courts rejected that argument. One of the other arguments raised by the lien claimant is the case law which says that the purpose of the recording is to give notice to third parties dealing with a property on notice of the existence of a lien. And the courts that have held that, they've used the word dealing. The appellant seems to take that word dealing and limit it to acquiring an interest in the property. So according to the lien claimant, the whole purpose of recording is to give notice to people acquiring an interest in the property. But that's not what the courts have said. The courts have said the purpose is to give notice to people dealing with the property. And as I said before, pre-existing encompassers deal with the property. That's their security for the loan. And they deal with it just in terms of managing the loan as well as if they were going to give it further advances, pay taxes, insurance payments, advances on the loan, reverse mortgages, construction loans, various scenarios where an existing or pre-existing encompasser needs to know the status, the title, and whether there are any liens on the property before they take any further action. In closing, one of the other points I'd like to make is that the mechanics lien statute has always been deemed to be in derogation of common law as to the requirements that are necessary to enforce a lien. And courts say that they must strictly construe those requirements in terms of establishing a lien, regardless of whether they appear fair or reasonable or serve any purpose.  And one of those requirements to enforce it as to a third party, such as an encompasser, whether it's pre-existing or subsequent to the construction contract, is that they timely record within four months of the last day of work. That's what the statute says. I request that Your Honors affirm the trial court's grand summary judgment that found that the mechanic lien was inferior to the mortgage and unenforceable against the mortgage. If you would. Sure. I'm having trouble with one concept here. And they talk about whether the issue as to whether the mortgagee is an owner. And I know some cases talk about this, but I can't make any sense of it because the fact is the mortgage is a lien on the property, as is the mechanic's lien a lien on the property. And they're both liens on the property, and whether one of those lien holders is an owner seems to me to be irrelevant to anything. The issue is which lien has priority over the other. Well, I agree. I don't think that ownership is relevant. I believe that the lien claimant, the contractor, is seeking to make that relevant and to somehow say that, therefore, because the mortgagee is an owner, they're saying the mortgagee is an owner. And if we go along with that argument, then there is no requirement to record within four months as to an owner. With respect to an owner, you only have to record within two years. And so I think that's the underlying thought of their argument. And I think it's not a logical argument because, as you said, a lien claimant and a mortgagee, they have liens on the property. They have no ownership interest in the property. It becomes an issue in mechanic lien law because generally under Illinois law, first in time is first in right. And so, therefore, a recorded mortgage would have priority over a subsequent lien. But the Illinois Mechanic's Lien Act says that the lien arises from the date of the contract and gives the lien claimant a certain priority that he might not otherwise enjoy in terms of just common law or the Commands Act priority issues. So that becomes an issue. Thank you. Thank you. Mr. Witness and Rebuttal. Yes, Your Honor. I want to thank Mr. Gilman for citing those cases that were argued for in the Supreme Court by our illustrious 16th President, the Honorable John Lincoln. They were very interesting. But they have nothing to do with what's going on in this case in the courtroom today. The statute then was just one simple six-month statute of limitation. If you haven't received a payment in six months, then you have to file suit within that six-month period of time or the limitation period expires and that was it, cut and dry. In 1903, the Mechanic's Lien Act was substantially revised and amended. Well, before that, in 187, I mean, in several times more, between 1846 and 1903, it was amended and changed. And in the last amendments, the representative in the House of Representatives, who had introduced the bill, used the term, this act is a patchwork, like a quilt, a patchwork of different laws that have been changed, added to, amended, going back for over 100 years. And it's true, it really is. Since 1903, they've never really stepped back and made changes in this language. If they would ask me, I could give them some suggestions and Mr. Bill has given them some suggestions and I welcome his suggestions and I'm sure he welcomes mine. But Section 7A, which that, subsection A was added in 2008, I believe, states that any other third party, in effect, who takes an interest in the land is entitled to receive the four-month statutory notice. It doesn't say all people who have an interest in the land. And the Pellet doesn't argue, does not argue, that, how can I phrase this, the Pellet's argument is that any other, like I said, and not the words all. Go ahead, finish your thought, I don't want to cut you off. Go ahead. This ownership business, let me ask you, is this critical to your argument that we need to find that the mortgagee is an owner under the Mechanics Lane Act? No, Your Honor. Ownership was an argument that came, that began in the trial court by the banks. They're not an owner of the property. Section 7A, in the section that gives the mechanic the discretionary right to file a claim for lien, refers to the owner. As to the owner, the mechanic may file a claim for lien. That's the sentence immediately following the sentence that says it's mandatory for the mechanic to file within four months to prejudice third parties. So, would you agree with me that the issue is, and I think you and your opposing counsel both agree what the issue is here, and the interpretation of the act, and ultimately at the end of the day, which lien takes priority over the other? Just like it's stated very clearly in section 16 of the Mechanics Lane Act, and just like the Supreme Court stated in its last Mechanics Lane case, the South National Bank versus Cypress, not Gardens, but Cypress development number one. The reference to the other sections of the act that was raised by Learner Counsel bring up additions, modifications, and mortgages adding to disbursements. Those are covered by separate sections of the act. The construction, systematic funding construction laws, they really have no effect because it's the last 120 days after the work was completed. That is the actual point against third parties who acquired an interest after the Mechanics Lane contract was issued. Thank you very much. Thank you, Mr. Whitten. Thank you, Mr. Gilman, also. You both made a lien case interesting, which is no easy task. And so that will be taken under advisement. As I said, Justice Goldrich will be listening to oral arguments and will be consulting with us on the case, and a written disposition will be issued.